# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**KHURRAN AHMED SHAH,**

    Plaintiff,

v.                                                            **CIVIL NO. 05-1066 JHDJS**

**ALLEN COOPER,** *et al.*,

    Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

1. This matter is a *pro se*, *in forma pauperis* civil rights action brought by a prisoner pursuant to 42 U.S.C. §1983 and <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971). Plaintiff is a prisoner at the Cibola Correctional Facility, a prison owned and operated by Defendant Corrections Corporation of America. He seeks monetary damages for infringement of his First Amendment right to free exercise of his religion. Plaintiff contends that Defendants have deprived him of an appropriate diet accommodating his Muslim faith. Plaintiff thereby asserts claims pursuant to the First and Fourteenth Amendments to the United States Constitution. Defendant Victoria Allen filed a motion to dismiss (Docket No. 13) pursuant to Fed.R.Civ.P. 12(b)(6). Subsequently, Plaintiff

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

filed a motion to file a supplemental complaint alleging retaliation (Docket No. 15).

2. Plaintiff is serving a federal sentence and, at the time of the complaint, was incarcerated in the privately run Cibola Correctional Facility. He alleges that he has the right to be served food prepared as Kosher or Halal due to his Muslim faith. He also contends that his rights have been violated because he has been essentially denied access to a prayer room. Lastly, Plaintiff contends that he has been subject to religious slander. With regard to the latter contention, Plaintiff states that a small pamphlet was distributed to prisoners which he finds offensive. Plaintiff included the pamphlet as Exhibit C to his complaint. The publication is a "Jack Chick" booklet proselytizing for the Christian belief and describing the conversion of a Muslim to a Christian.

3. The Court is required to construe the complaint liberally. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, Plaintiff must show a constitutional violation to state a claim pursuant to Bivens, see Bivens, 403 U.S. at 396-97, or a deprivation of rights secured by the constitution or law of the United States to obtain relief under 42 U.S.C. §1983. In ruling on Defendant Allen's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim, the Court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party. Maher v. Durango Metals, Inc., 144 F.3d 1302, 1304 (10th Cir.1998). Dismissal of a complaint pursuant to Rule 12(b)(6) will be upheld only if it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Further, under Rule 12(b)(6), the Court has broad discretion in determining whether to consider materials outside of the pleadings, and if it chooses to consider such material, it must treat a motion to dismiss as a motion for summary judgment. See Lowe v. Town of Fairland, 143 F.3d 1378, 1381 (10th Cir.1998). Here, Defendant

did not submit exhibits in support of his motion to dismiss. However, the Court relies upon Plaintiff's extensive exhibits regarding his exhaustion of administrative remedies in construing and addressing his claims.

    4. The Free Exercise Clause of the First Amendment of the Constitution mandates that prison authorities afford prisoners reasonable opportunities to exercise their sincerely held religious beliefs. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). Prisoners' free exercise rights are, however, subject to prison restrictions rationally related to legitimate penological interests. O'Lone, 482 U.S. at 349. In determining whether a governmental policy is rationally related to a legitimate interest, a court must weigh several factors. Id. at 350. First, the court considers whether there is a logical connection between the prison regulation and the asserted penological interest. Id.; Turner v. Safley, 482 U.S. 78, 89-91 (1987). Second, the court considers whether alternative means of exercising the religious right in question remain open to prisoners. Turner, 482 U.S. at 90. Third, the court assesses the impact the accommodation of the right in question would have on guards, other prisoners, and on the allocation of prison resources. Id. Fourth, the court considers whether any policy alternatives exist that would accommodate the right in question at *de minimis* cost to the prison. Id. at 91.

    5. Prisoners have a constitutional right to a diet conforming to their religious beliefs. Beerheide v. Suthers, 286 F.3d 1179, 1185 (10th Cir. 2002). However, prisoners do not have the right to the diet of their choice. The gravity of the situation in Beerheide, *supra*, stemmed from the fact that inmates were forced to affirmatively take an action that defiled their body and, according to their beliefs, imperiled their souls. Hammons v. Saffle, 348 F.3d 1250, 1256 (10th Cir. 2003). However, review of the exhibits attached to the complaint, specifically, review of the grievances submitted by Plaintiff regarding his diet, show that he was being provided with a vegetarian diet

3

designed to avoid contravening Muslim religious beliefs. Other courts have held that prisoners' rights are not violated by the failure to provide meals incorporating Halal meats so long as Muslim dietary restrictions are observed and foods offensive to those restrictions are not served to Muslim prisoners. See Williams v. Morton, 343 F.3d 212 (3rd Cir. 2003)(holding constitutional the provision of a nutritionally balanced, pork free vegetarian diet to Muslim prisoners despite their request for meals incorporating Halal meat); Salaam v. Collins, 830 F.Supp. 853 (D. Md. 1993) (same holding in the face of an Equal Protection argument based upon the provision of Kosher meats to Jewish prisoners), affirmed Calhoun-El v. Robinson, 70 F.3d 1261 (4th Cir. Dec 04, 1995)(unpublished disposition).

      6. With regard to the "Jack Chick" booklet, Plaintiff attached his prison grievance dated April 29, 2005 to the complaint. The response to that grievance was that the material Plaintiff complained of was retrieved from the facility and discarded. Plaintiff indicated that he was not satisfied with the response and, on June 2, 2005 the administration of the Cibola County Correctional Center indicated that in addition all items provided by the supplier of the pamphlet were scrutinized for other offensive content before any were returned to the facility. Plaintiff does not allege that he had any further exposure to the offensive booklet or similar materials or that Defendants were aware of the material prior to his grievance. Plaintiff's allegation that mere exposure to the offensive materials fails to state a claim in light of Defendants' prompt action to remove the materials from the facility.

      7. Plaintiff's complaint that he was not provided with a prayer room in which to conduct Friday services was met with a response that the room he requested was not available for the hours he requested, from 12:30 p.m. through 2:00 p.m.. Plaintiff's complaint and the materials attached do not indicate that he was denied access to a place to pray, but rather access to a private place to pray for one short period, due to classes being held in all available common rooms during a portion of the

4

time he requested for prayer services. Ultimately, a room was made available to Plaintiff for prayer during the time he requested. Plaintiff was not only afforded relief in his administrative complaint, but he has failed to state a claim because some means of exercising his religion was available, even if it was not his chosen means. See Hammons, 348 F.3d at 1256. The Supreme Court has upheld prison regulations interfering with Friday Muslim prayer services, so long as alternative means of practicing their religion is available to Muslim inmates and the interference is in furtherance of a valid penological objective. O'Lone v. Estate of Shabazz, 482 U.S. 342, 352 (1987). Here, the delay in providing Plaintiff a separate room for Friday prayer was due to all available rooms being used to conduct classes, which use is clearly related to a legitimate penological objective.

8. Plaintiff must obtain leave of Court to supplement his complaint. Fed.R.Civ.P. 15(a). Courts generally refuse leave to amend only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir.1993). In the Tenth Circuit, untimeliness alone is an adequate reason to refuse leave to amend. Id. Here, Plaintiff seeks to amend his complaint to add a claim for retaliation for the filing of the instant lawsuit.

9. The motion should be denied because the amendment sought would be futile. The retaliation alleged by Plaintiff consists of being placed in segregation for investigation of an alleged inappropriate relationship with staff and being subject to an administrative transfer to the Federal Correctional Institution, Lompoc. In this instance, allowing supplementation of the complaint would be futile. "The due process rights of prisoners are subject to reasonable limitation or restriction in light of the legitimate security concerns of the institution, ... and 'the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of

5

confinement ordinarily contemplated by a prison sentence.' " Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir.1996) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)). Plaintiff's placement in segregation during an investigation does not implicate his constitutional rights. Further, Plaintiff has no right to be placed in any particular institution and transfer between institutions within a prison system does not implicate his constitutional rights. See Meacham v. Fano, 427 U.S. 215, 225 (1976).

10. Plaintiff raises the Religious Land Use and Institutionalized Persons Act (RLUIPA) with respect to his claim that he was inappropriately denied a prayer room and exposed to materials offensive to his faith. The RLUIPA forbids a prison from "impos[ing] a substantial burden on the religious exercise" of an inmate "unless [it] demonstrates that imposition of the burden on that person ... (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The statute defines religious exercise to "include[ ] any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

11. The Tenth Circuit Court of Appeals has yet to pass on the constitutionality of the RLUIPA. Jacklovich v. Simmons, 392 F.3d 420, 430 n.7 (10th Cir. 2004). Regardless of that fact, Plaintiff has failed to state a claim pursuant to the RLUIPA. In this case, a conflict between Plaintiff's desired Friday prayer time and other uses of available space was resolved after Plaintiff missed six prayer sessions. Plaintiff's grievances were met with the explanation that classes were being held in available rooms and a room was later designated for his use. Plaintiff's complaint regarding offensive publications being circulated was resolved by the removal of those publications from the prison and the inspection of other tracts from the supplier of that pamphlet to ensure they did not have offensive content. These circumstances do not comprise a substantial burden upon Plaintiff's religious exercise.

In <u>Lyng v. Northwest Indian Cemetery Protective Ass'n</u>, 485 U.S. 439 (1988), the Supreme Court established what constitutes a burden on religious beliefs and practices. Incidental effects of otherwise lawful government programs "which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs" do not constitute substantial burdens on the exercise of religion. <u>Id.</u> at 450-5 (quoted in <u>Thiry v. Carlson</u>, 78 F.3d 1491, (10th Cir. 1996)). In order to be a substantial burden on a religious belief, a regulation must significantly inhibit or constrain conduct or expression, meaningfully curtail an individual's ability to express adherence to his faith, or deny reasonable opportunities to engage in activities fundamental to that religion. <u>Werner v. McCotter</u>, 49 F.3d 1476, 1480 (10th Cir. 1995) (interpreting the Religious Freedom Restoration Act). No such burden is described in Plaintiff's complaint.

**RECOMMENDED DISPOSITION**

That Plaintiff's Motion to Supplement the Complaint (Docket No. 15) be denied; that Defendant Allen's Motion to Dismiss (Docket No. 13) be granted; and that this matter dismissed with prejudice.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**